974 So.2d 458 (2008)
Richard DONOVAN, Individually and on behalf of all those similarly situated, Appellants,
v.
BROWARD COUNTY BOARD OF COMMISSIONERS, Appellee.
No. 4D07-52.
District Court of Appeal of Florida, Fourth District.
January 23, 2008.
*459 William R. Amlong and Jennifer Daley of Amlong & Amlong, P.A., Fort Lauderdale, for appellant(s).
Jeffrey J. Newton, County Attorney, Andrew J. Meyers, Chief Appellate Counsel, and James D. Rowlee, Assistant County Attorney, Fort Lauderdale, for appellee.
David H. Spalter of Jill S. Schwartz & Associates, P.A., Winter Park, for Amicus Curiae-National Employment Lawyers Association, Florida Chapter.
STONE, J.
Donovan, individually and on behalf of all those similarly situated, appeals an order dismissing a Florida Civil Rights Act retaliation claim against his employer, Broward County.
The sole issue is whether the county's policy of foreclosing otherwise available internal remedies because the employee has filed a charge of discrimination with the Florida Commission on Human Relations (FCHR) or the federal Equal Employment Opportunity Commission (EEOC) is an adverse employment action constituting retaliation. We conclude that the policy does meet the retaliation standard articulated in Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).
Donovan, a white bus driver, filed an internal complaint with the county Office of Equal Opportunity because he was passed over for a promotion in favor of an African-American employee.
The county's published procedure promises internal investigation and "appropriate follow-up management action," or internal mediation, for, any county employee "who believes that he or she has been discriminated against." However, the policy provides, in pertinent part:
[O]nce a complaint is filed with Equal Employment Opportunity Commission (EEOC) and/or Florida Commission on Human Relations (FCHR) or other relevant federal or state agency, the OEO investigation process will be administratively closed except in allegations involving harassment or retaliation. . . .
When the county learned that Donovan and another white bus operator had filed charges with the EEOC and the FCHR concerning another promotional opportunity within the transit division that had been awarded to an African-American employee, the county terminated, its investigation.
The retaliation provision of the FCRAwhich is virtually identical to its federal counterpart, Title VII 42 U.S.C. § 2000e-3(a)provides, in relevant part that:
[i]t is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation under this section.
§ 760.10(7), Fla. Stat. (2007). The EEOC, to which Florida courts defer in interpreting any ambiguity in Title VII or in the Age Discrimination in Employment Act (ADEA), states that while "[t]he most obvious types of retaliation are denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, and discharge" and "[o]ther types of adverse actions include threats, reprimands, negative evaluations, harassment, or other adverse treatment, . . . [s]uspending or limiting access *460 to an internal grievance procedure also constitutes an `adverse action.'" 2 EEOC Compliance Manual, Section 8, Retaliation, Chapter II, Part D, § 1 (May 20, 1998)[1].
To establish a prima facie claim for retaliation under Title VII, plaintiff must demonstrate that: (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there is a causal relation between the two events. Guess v. City of Miramar, 889 So.2d 840, 846 (Fla. 4th DCA 2004) (citing Harper v. Blockbuster Entn't Corp., 139 F.3d 1385, 1388 (11th Cir.1998)).
In EEOC v. Board of Governors of State Colleges and Universities, 957 F.2d 424 (7th Cir.1992), the court recognized that a policy of prohibiting employees who had filed EEOC charges from using the employer's in-house grievance procedure violated the ADEA's anti-retaliation provision. Additionally, in Fasold v. Justice, 409 F.3d 178 (3d Cir.2005), the court held that it is unlawfully retaliatory for an employer to deny an employee's discrimination claim in a non-mandatory internal grievance proceeding because the employee filed an EEOC complaint.
In dismissing Donovan's complaint, the trial court relied upon the Second Circuit's decision in United States v. New York City Transit Authority, 97 F.3d 672 (2d Cir. 1996), which held that a retaliation claim could not be based on an employer's policy of denying its internal review process to employees once they had filed a complaint with an outside agency.
The rationale underlying the decision New York City Transit, Authority was subsequently applied in Browne v. City University of New York, 419 F.Supp.2d 315 (E.D.N.Y.2005), also cited by the trial court in its order of dismissal, which held that an employer's discontinuation of an investigation upon an employee's commencement of formal charges with an outside anti-discrimination agency cannot support a retaliation claim. Browne, 419 F.Supp.2d at 334-35.
Application of the latter line of cases in this case, although inconsistent with the EEOC policy manual, initially appears reasonable, as it is unlikely that the actual purpose or intent of the Broward rule is retaliatory. Rather, it is patently in response to concern for administrative efficiency and economy.
Nevertheless, the Supreme Court has recently expanded the definition of "adverse employment action" for purposes of a Title VII retaliation claim. In White, the Court clarified that an employee need only show that "a reasonable employee would have found the challenged action materially adverse." 126 S.Ct. at 2415. In other words, the materially adverse employment action would discourage a reasonable employee from making or supporting a charge of discrimination.
Significantly, the Supreme Court concluded that "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace." Rather, any action, whether or not directly related to work, can form the basis of a retaliation claim, so long as a "reasonable employee" would consider the action to be "materially adverse."
In this case, the trial court concluded this policy was not "discriminatory per se" because Donovan, on behalf of himself and all others similarly situated, did not "set forth any entitlement to an internal investigation," nor did he allege that the policy impacted his "job, working conditions, or compensation." In other words, as in the *461 cases relied on by the trial court, the decision focused on the nature of the challenged policy, rather than its impact upon the employee.
In light of the Supreme Court's decision in White, we conclude that the Second Circuit line of cases relied upon by the trial court no longer applies. This inter-pretation of White is in accord with Spector v. Board of Trustees of Community Technical Colleges, 463 F.Supp.2d 234, 238 (D.Conn.2006), in which the court stated:
The Supreme Court's decision in White altered the standard previously used by the Second Circuit, which defined an adverse employment action as a `materially adverse change in the terms and conditions of employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities.' Under that standard, prototypical examples of adverse employment actions included termination, demotion via a reduced wage, salary or job title, a material loss of benefits, or significantly reduced job responsibilities. White, however, found that standards such as these improperly limited Title VII's antiretaliation provision to retaliatory actions that affect the terms and conditions of employment.

(Emphasis supplied)
We note that the trial court's ruling suggests that the county's policy merely "requires an employee to use the proceedings [internal investigation, administrative charge] sequentially rather than simultaneously," and thus, would not "dissuade a reasonable employee from making or supporting a charge of discrimination." However, this view fails to consider that while an internal investigation is taking place, the 365-day limitations period within which an administrative charge must be filed[2] continues to run. Consequently, under the county's policy, an employee may not have the opportunity to "use the proceedings sequentially" without risking the loss of the right to proceed under the FCRA or Title VII. Rather, employees may be placed in a "Catch-22," having to choose between filing a charge and losing access to internal dispute resolution mechanisms or continuing their pursuit of an internal remedy and risk losing the right to bring a formal charge if those efforts fail.
Additionally, in its amicus brief, Florida NELA[3] notes the significant benefits of internal investigations to employees:
They provide employees with an opportunity to resolve disputes in a setting that is more expedient and less adversarial than the litigation process. Moreover, due to the informal nature of such investigations, and the lack of a third-party decision maker who can impose an outcome, both the employer and co-worker witnesses are typically more open and receptive to internal investigations as compared to litigation. This open approach, in many cases, results in an outcome that permits the employee to maintain a positive working relationship with his or her employer.
The county's policy removes these benefits upon the filing of an administrative charge of discrimination. As a result, the policy will tend to dissuade a reasonable employee from filing a state charge.
We, therefore, reverse the order dismissing the complaint for failure to state a *462 cause of action and remand for further proceedings.
STEVENSON, J. and TRAWICK, DARYL E., Associate Judge, concur.
NOTES
[1] Which can be found at http://www.eeoc.gov/ policy/docs/retal.html# Il part D.
[2] See § 760.11(1), Fla. Stat. ("Any person aggrieved by a violation of [the FCRA] may file a complaint with [the FCHR] within 365 days of the alleged violation. . . . ").
[3] National Employment Lawyers Association