# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-0991
Lower Tribunal No. 20-CA-005312

_____

STATE FARM FLORIDA INSURANCE COMPANY,

Appellant,

v.

ADELE FELTES,

Appellee.

_____

Appeal from the Circuit Court for Lee County.
Joseph C. Fuller, Judge.

November 27, 2024

NARDELLA, J.

State Farm Florida Insurance Company ("State Farm") appeals the final judgment entered in favor of its insured, Adele Feltes ("the Homeowner"). State Farm argues that the trial court erred by denying its motion for a directed verdict and giving jury instructions that were inaccurate, confusing, and contrary to the evidence.[1] After considering each issue raised on appeal, we affirm in part and reverse in part. As to the first issue, we agree with State Farm that the undisputed

---

[1] This case was transferred from the Second District Court of Appeal to this Court on January 1, 2023.

evidence presented at trial established that the Homeowner was not entitled to coverage for the cost of accessing the leaking drain line underneath her home's foundation, i.e. "tear out" coverage. But, as to the second issue, we affirm without further discussion, determining that the first challenged instruction addressing overflow inside the house was appropriate and the second challenged instruction on excluded losses was not properly preserved.[2]

## I. Background

In the autumn of 2018, the Homeowner's kitchen sink overflowed. The following spring, the toilet in her hall bathroom did the same. Prompted by the overflows and other signs of a greater plumbing problem, the Homeowner hired a plumber. Upon investigation, the plumber discovered wear, tear, corrosion, and general deterioration in the home's original cast iron drain line which, after sixty years of use, had developed one or more holes allowing wastewater to escape into the surrounding structural fill underneath the home. The solution the plumber reported was a total replacement of the home's cast iron drain line, an endeavor

---

[2] We find the second challenged instruction on excluded losses was not properly preserved because the argument State Farm makes on appeal is materially different from the argument it made below. Fla. R. Civ. P. 1.470(b) ("At [the charge] conference, all objections shall be made and ruled upon and the court shall inform counsel of such instructions as it will give. No party may assign as error the giving of any instruction unless that party objects thereto at such time, or the failure to give any instruction unless that party requested the same."); *Morrison v. State*, 818 So. 2d 432, 446 (Fla. 2002) ("In order to preserve the issue for appellate review, a party must have made the same argument to the trial court that it raises on appeal.").

which would require the plumber to tear out portions of the floor and foundation to access the line. The Homeowner, who had a homeowner's policy in full force and effect with State Farm, reported this news to State Farm.

State Farm conducted its own investigation and subsequently denied coverage. The parties proceeded to litigation and eventually trial where they sparred over the extent of State Farm's tear out coverage and the arguable application of an exclusion for repeated seepage or leakage. State Farm unsuccessfully moved for a directed verdict on these grounds. The jury returned its verdict in favor of the Homeowner, awarding her nearly $60,000 in tear out costs. Now, on appeal, State Farm asks this Court to reverse, arguing, as it did below, that the plain language of the repeated seepage or leakage exclusion and the undisputed evidence at trial required the trial court to grant its motion for directed verdict. After conducting a de novo review of this issue, we agree.[3]

---

[3] We review de novo the trial court's directed verdict decision. *Lancheros v. Burke*, 375 So. 3d 927, 929 (Fla. 6th DCA 2023). As recognized by both parties, we apply the same standard as the trial court in evaluating State Farm's motion, which admits the truth of all the facts stated in the evidence presented and admits every conclusion favorable to the Homeowner that a jury might reasonably infer from that evidence. *CDS Holdings I, Inc. v. Corp. Co. of Miami*, 944 So. 2d 440, 443 (Fla. 3d DCA 2006). And, if our review reveals conflicts in the evidence, or if different reasonable inferences could be drawn from the evidence, then we must affirm the trial court's denial. *Etheredge v. Walt Disney World Co.*, 999 So. 2d 669, 671 (Fla. 5th DCA 2008).

## II.    The Policy

We begin our analysis with the policy. The Homeowner's policy states in its grant of coverage that "[State Farm] will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited . . ." Central to the parties' dispute in this case, the policy also provides additional coverage for reasonable costs a homeowner may incur to tear out and replace certain parts of the building structure. This provision, which plainly indicates that such additional coverage is limited, states:

> If a loss insured to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building structure necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped. We will not pay for the cost of repairing or replacing the system or appliance itself. . . .

Like the grant of coverage for direct physical loss, the grant of coverage for tear out costs is subject to "all the terms, provisions, exclusions, and conditions" in the policy. In its motion for a directed verdict, State Farm argued that two exclusions applied to the Homeowner's claim for tear out coverage, one which the Homeowner concedes, and the other which the Homeowner contests.

First, State Farm argued, and the Homeowner conceded, that the home's original cast iron drain line was damaged by wear, tear, deterioration, and corrosion and that its loss was expressly excluded by the policy, which provides that State Farm will not pay for any loss that consists of, or is caused by:

4

g. wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h. corrosion, electrolysis, or rust;

There was no question, either below or on appeal, that this exclusion applied, and, as a result, the replacement of the home's cast iron drain line is not covered. But, as argued by the Homeowner, that is not the end of the analysis because the policy contains an ensuing loss provision, which states:

> However, we will pay for any resulting loss from [the list of excluded losses] unless the resulting loss is itself a Loss Not Insured as described in this Section.

State Farm argues that the wear, tear, deterioration, and corrosion of the cast iron drain line led to repeated leakage or seepage of water into the structural fill and, because the policy excludes a loss that consists of, or is caused by, the peril of repeated seepage or leakage, then any ensuing damage to the structural fill was a "Loss Not Insured." To prove this, State Farm needed to show that the evidence at trial supported the application of a second exclusion; that is, the repeated seepage or leakage exclusion. That exclusion reads, in relevant part, as follows:

> We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:
>
> . . . .
>
> f. seepage or leakage of water, steam, or sewage that occurs or develops

5

over a period of time:
(1) and is:
    (a) continuous;
    (b) repeating;
    (c) gradual;
    (d) intermittent;
    (e) slow; or
    (f) trickling; and
(2) from a:

. . . .

    (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.

With this language in mind, we examine each event the Homeowner argued entitled her to tear out coverage to determine if either event triggered tear out coverage and, if it did, whether it consisted of, or was caused by, an excluded peril.

### III.    Analysis of Tear Out Coverage

The Homeowner has consistently argued that the wear, tear, deterioration, and corrosion of her drain line resulted in two events, both of which triggered tear out coverage to access the deteriorated drain line: (a) overflows from the toilet in the hall bathroom; and, (b) wastewater escaping the drain line and infiltrating the structural fill under the slab. We examine each in turn.

A. Toilet Overflow

The policy provides that if a covered loss is caused by water or sewage escaping the plumbing system, State Farm will pay the reasonable cost incurred to tear out and replace only that particular part of the building structure necessary to

6

gain access to the specific point from which the water or sewage escaped. In its motion for a directed verdict, State Farm argued that water overflowing from the Homeowner's toilet did not trigger tear out coverage because there is no need to tear anything out to access the "specific point" in the plumbing system where the water escaped when the toilet overflowed. *State Farm Fla. Ins. Co. v. Shotwell*, 336 So. 3d 64, 67 (Fla. 3d DCA 2021) (involving identical tear out provision and concluding that toilet overflow did not trigger tear out coverage to access corroded pipes under slab).

As recently explained by the Third District Court of Appeal in *Shotwell*, the tear out provision is "very narrow" and applies to "only that particular part" "necessary" to address "the specific point" "from which the water . . . escaped." *Id*. at 67. Here, as in *Shotwell*, there is no need to tear out any portion of the home to access the toilet which is the point from which the water escaped. Accordingly, as to the overflow from the toilet triggering tear out coverage, we agree with the decision in *Shotwell* and find that State Farm was entitled to a directed verdict to the extent the Homeowner claimed that she was entitled to tear out coverage because of the toilet overflow.

B. Structural Fill

The Homeowner also argued that wastewater escaped from holes in the deteriorated drain line under the home causing damage to the surrounding structural fill, thus triggering tear out coverage. While coverage for the overflow events could

7

be determined solely based upon the language in the grant of coverage for tear out costs, her second basis for tear out coverage requires this Court to analyze both the ensuing loss provision and the exclusion for repeated seepage or leakage.

At trial, the Homeowner conceded that the deteriorated drain line was not covered by the policy but contended the damage to the structural fill, which supported the deteriorated drain line, was a resulting loss covered under the policy's ensuing loss provision. To determine whether the damage to the structural fill is a covered resulting loss, we begin with the ensuing loss provision which followed the exclusion negating coverage for the drain line's deterioration. It states:

> However, we will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

Under the ensuing loss provision, only those ensuing losses that are not themselves excluded by the policy are covered. *Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017) ("Thus, while the exclusion for '[w]ear and tear' or 'deterioration' might mean, and in this case does mean by virtue of the Maspons' concession that Homeowners Choice is not obligated to compensate the Maspons for their corroded drain pipe, if the Maspons suffered consequential loss as a result of the corroded pipe and that consequential or 'ensuing' loss is not excluded under another provision of the policy, the loss is covered."); *Bergeron v. State Farm Fire & Cas. Co.*, 766 A.2d 256, 260 (N.H. 2000) (construing the same policy language and finding that a loss resulting from faulty

8

construction was not covered because the loss itself was excluded). In its motion for a directed verdict, State Farm argued that the damage to the structural fill was itself a "Loss Not Insured" based upon the undisputed evidence presented at trial. Reviewing that evidence and considering the plain language of the repeated seepage or leakage exclusion, we agree with State Farm. Every reasonable inference that could be drawn from the evidence adduced at trial supports the application of the repeated seepage or leakage exclusion, which in turn means that the resulting loss was itself a Loss Not Insured.

During the Homeowner's case-in-chief, the jury learned that the home, which was built in 1961, sits on a concrete slab supported by structural fill in the form of compacted sand. Within the structural fill runs the original cast iron drain line, which allows wastewater from the residence to flow into the sewer. In November of 2018, the drain line running underneath the Homeowner's residence failed, causing her kitchen sink to overflow. Four months later, the toilet in her guest bathroom also overflowed, sending wastewater onto the bathroom floor. After the toilet overflowed, the Homeowner reported a claim to State Farm and disconnected the supply and drain lines from the sink in the vanity because her plumber informed her that it was clogged and could not be unclogged without "tearing out everything."

Explaining the cause of these events to the jury, the Homeowner's plumbing expert, Edward Jaremko, testified that the drain line running underneath the home's slab failed due to "wear, tear, deterioration, and corrosion." While he could not

9

provide the exact date of the failure, he opined that the system likely failed around the time the kitchen sink overflowed. The failure caused water to begin coming out of the drain line each time someone used the system by flushing the toilet or running the faucet. Each time this happened a certain amount of wastewater went down the drain line and a certain amount escaped out the drain line. In sum, the Homeowner's expert testified that for more than four months, every time the system was used, a certain amount of wastewater escaped the drain line and invaded the surrounding structural fill.

Most telling, when asked directly whether this continued loss of water into the structural fill constituted repeat seepage or leakage, the Homeowner's expert said this:

> I mean, the supply lines are on, but each time you open the faucet or [ ] flush the toilet, then water comes out of the pipe and repeated seepage or leakage occurs. It's not something constantly dripping all of the time. This is only when you use it where water is escaping and damaging.

The testimony from the Homeowner's own expert conclusively proves that the initial excluded loss, i.e., deterioration of the drain line, led directly to another excluded loss, i.e., repeated seepage or leakage of water that damaged the structural fill. *See Bergeron*, 766 A.2d at 260; *Peek v. Am. Integrity Ins. Co.*, 181 So. 3d 508, 512–13 (Fla. 2d DCA 2015) ("[B]oth of the claimed ensuing losses are specifically excluded under the policy because an excluded cause of loss—defective Chinese drywall— led directly to another set of exclusions—pollution and corrosion").

10

Although the Homeowner argues otherwise, it matters not that the leak was periodic because the policy does not require a steady drip, just a repeated one. It also matters not that the phrase "over a period of time" is an undefined term in the policy, because it is clear and unambiguous, and obviously met when a leak lasts for several months. *See, e.g.*, *Brodzinski v. State Farm Fire & Cas. Co.*, No. 16-6125, 2017 WL 3675399, at *5 (E.D. Pa. Aug. 25, 2017) (finding exclusion for leakage and seepage of water "over a period of time" unambiguous and concluding that evidence of repeated leakage that lasted long enough to result in rot and mold growth fit within the exclusion) (citing *Fifth v. State Farm Ins. Co.*, No. 11-7440, 2014 WL 1253542, at *5 (D.N.J. Mar. 25, 2014) (finding exclusion for leakage and seepage of water "over a period of time" unambiguous, and concluding that leakage over the course of one month fit within the exclusion)). Finally, we cannot accept the Homeowner's argument that the exclusion does not apply because each drop of wastewater caused a unique damage. The Homeowner's theory that the structural fill was damaged the moment the drain line leaked, and each subsequent time thereafter, requires a reading of the term "damage" that is so granular it would transform any change in a building structure, no matter how minuscule, to a claim for loss to property. This runs counter to the rules of interpretation, which require that we interpret insurance contracts in accordance with the plain language of the policy and not in a way that would render another provision of the policy meaningless or lead to an absurd result. *E.g.*, *Fayad v. Claredon Nat. Ins. Co.*, 899

11

So. 2d 1082, 1086 (Fla. 2005) ("[I]nsurance contracts are construed in accordance with the plain language of the polic[y] as bargained for by the parties." (internal quotation marks omitted)); *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1140 (Fla. 1998) ("Suffice it to say that insurance policies will not be construed to reach an absurd result."); *Mendota Ins. Co. v. At Home Auto Glass, LLC*, 348 So. 3d 641, 644 (Fla. 5th DCA 2022) ("Courts must 'examine the entire agreement and seek to harmonize and give effect to all provisions so that none [will] be meaningless.'") (quoting *Carolina Cas. Ins. Co. v. Spicer*, 323 So. 3d 350, 352 (Fla. 1st DCA 2021)).

For these reasons, the Homeowner is not entitled to tear out coverage because the wastewater escaping the drain line was not a "Loss Insured to Coverage A property." As the evidence on this point was undisputed, the trial court should have granted State Farm's motion for a directed verdict. Accordingly, we reverse the trial court's denial of State Farm's motion for directed verdict and remand the case with instructions that judgment on the Homeowner's claim for tear out costs be entered in State Farm's favor. We affirm the judgment in all other respects.

AFFIRMED in part; REVERSED in part.

WOZNIAK, J., and ALVARO, C.K., Associate Judge, concur.

C. Ryan Jones, Ashley R. Kellgren, and Scot E. Samis, of Traub Lieberman Straus & Shrewsberry LLP, St. Petersburg, for Appellant.

Mark A. Nation and Paul W. Pritchard, of The Nation Law Firm, Longwood, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED